COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| Suffolk, ss. | TRIAL COURT DEPARTMENT<br>SUFFOLK SUPERIOR COURT<br>CIVIL DIVISION |

| | |
|---|---|
| GEORGE SAVAGE<br>    *Plaintiff*,<br><br>v.<br><br>CITY OF BOSTON, and<br>KARL DUGAL, in his<br>individual capacity,<br>    *Defendants*. | Civil Action No. *1781* -CV- *1760*<br><br>COMPLAINT AND JURY DEMAND |

Comes now the Plaintiff, by and through counsel, and states as and for his Complaint and Jury Demand as follows:

## PARTIES

1. Plaintiff George Savage is a natural individual who was, at all times relevant to this complaint, a resident of the Commonwealth of Massachusetts, and who currently resides in Boston, Massachusetts.

2. Defendant Karl Dugal is a natural individual whose current domicile is unknown to Plaintiff. His place of work is believed to be the Boston Police Department ("BPD"), 40 Sudbury Street, Boston, MA 02114. At all times material to the complaint, he was employed by the BPD as a police officer. He is sued in his individual capacity.

3. Defendant City of Boston is a duly organized city located in Suffolk County and was at all times material to this complaint the employer of Defendant Karl Dugal.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are appropriate before this Court because all of the events forming the basis for the complaint occurred in Suffolk County.

## FACTS

5. On June 16, 2014 around 9:30 in the morning, George Savage was standing on the sidewalk on Boylston Street in downtown Boston.

6. He was quietly minding his own business; he had committed no crime and he had no warrants for his arrest.

7. At some point, Officer Karl Dugal of the BPD approached Mr. Savage and accused Savage of being an individual named Robert Green, who had several outstanding warrants.

8. Dugal claimed, both in his police report associated with this incident and at trial, that Savage bore a strong resemblance to Green.

9. Beyond both men being bald, black, and middle-aged, Savage and Green do not look at all alike.

10. Mr. Savage repeatedly denied that he was Robert Green and told Dugal that his name was George Savage.

11. Mr. Savage attempted to end this encounter and walked away from Dugal up Boylston Street.

12. Dugal followed Savage up Boylston Street towards Tremont Street, and continued to follow Savage when he turned around to walk back towards where this encounter had begun.

13. Eventually, Dugal grabbed Savage to place him under arrest, threw him against a fence in an alley, and began to choke Savage with Dugal's forearm.

14. Two additional officers then joined Dugal, and Mr. Savage was thrown face down on the pavement, handcuffed, and arrested.

15. That same day, Dugal applied for a complaint in the Central Division of the Boston Municipal Court against Savage, requesting charges of Disorderly Conduct, Assault and Battery on a Public Employee, Resisting Arrest, and Threats to Commit a Crime.

16. A complaint issued against Savage for the above-noted charges with Docket Number 1401-CR-3730 on June 16, 2014.

17. A jury trial was held on those charges on November 15th and November 16th of 2016 in the Central Division of the Boston Municipal Court.

18. Savage was acquitted of all charges on November 16, 2016.

19. At trial, Dugal testified that Savage was not free to leave their initial encounter and that he had the authority to detain Savage, despite Savage having done nothing wrong and having denied that he was Robert Green.

20. When pressed as to what specific facts gave him the right to detain Savage, Dugal claimed that Savage bore a strong resemblance to Robert Green and that was sufficient.

21. When asked what specific physical features Green and Savage shared, Dugal could not name a single one beyond them both being bald, black, and middle-aged, despite being presented with a photograph of Robert Green at trial.

22. Dugal's testimony also demonstrated an ignorance of basic criminal law.

23. Specifically, he did not appear to understand the elements of Disorderly Conduct and what actions would constitute a violation of the Disorderly Conduct statute.

24. Officer Dugal's harassment and wrongful arrest of Mr. Savage, an innocent black man, was consistent with the custom and practice of the BPD regarding the targeting of black individuals in the community.

25. In October of 2014, the American Civil Liberties Union of Massachusetts ("ACLU") released their report Black, Brown, and Targeted: A Report on Boston Police Department Street Encounters from 2007-2010.

26. This report detailed the findings from a years-long study of Boston Police Department Field Interrogation, Observation, Frisk, and/or Search ("FIOFS") reports.

27. The FIOFS reports reflected black individuals being stopped by police at rates wildly disproportionate to their share of the population.

28. The report concluded that widespread targeting of black individuals was occurring by the BPD, even after controlling for non-race factors.

29. In short, it determined that being black is a significant factor driving BPD-civilian encounters.

30. Furthermore, 75% of the FIOFS reports cited the reason for the encounter as "investigate person" without citing any specific reason that might justify such an "investigation."

31. The report further concluded that, over a four year period, over one hundred thousand black Bostonians were subjected to encounters with the police that did not result in an arrest or a seizure of contraband.

32. In June of 2012, BPD was made aware that the proportion of black individuals stopped in the FIOFS reports far exceeded the proportion of black individuals in the Boston population.

33. In March of 2014, several months before Dugal encountered Savage, the BPD was informed that this racial bias persisted even when controlling for crime and other non-race factors.

34. Dugal's actions in this matter are completely consistent with the findings detailed in the ACLU's report regarding BPD's racist policing practices.

35. BPD either was, or should have been, aware of these practices and taken proper steps to appropriately train and supervise officers so that they policed in a racially-neutral manner.

36. In the case of Dugal, such training and supervision did not occur.

37. Furthermore, given his demonstrated ignorance of the law, Dugal was not adequately trained on the rules of criminal law that should have guided his work every day.

38. As a direct and proximate result of the Defendants' actions, Mr. Savage suffered substantial emotional distress, anxiety, and depression associated with defending himself against these baseless charges that exposed him to a potential criminal sanction of several years in the house of correction.

39. To this day, he feels the emotional aftereffects of this event.

### Count I: 42 U.S.C. §1983
### (Defendant Dugal)

40. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

41. Defendant Dugal arrested Plaintiff without probable cause to believe that he had committed a crime.

42. Defendant Dugal had no reason to use force against Plaintiff.

43. Defendant Dugal used unreasonable force against Plaintiff.

44. Defendant Dugal deprived Plaintiff of his clearly established and well-settled rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizures of his person, and to be free from unreasonable force.

45. As a direct and proximate result of Defendant Dugal's conduct, Plaintiff suffered damages as described above.

### Count II: Claim under Massachusetts Law for Assault and Battery
### (Defendant Dugal)

46. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

47. Defendant Dugal committed the tort of assault and battery against Plaintiff when he touched Plaintiff without Plaintiff's consent and without legal justification.

48. As a direct and proximate result of Defendant Dugal's conduct, Plaintiff suffered damages as described above.

### Count III: Claim under Massachusetts Law for Malicious Prosecution
### (Defendant Dugal)

49. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

50. Defendant Dugal improperly initiated criminal proceedings against Plaintiff by applying for charges against Plaintiff unsupported by probable cause.

51. Defendant Dugal instituted these proceedings with malice, motivated, at least in part, by a desire to cover up his own bad acts on the date of June 16, 2014.

52. The criminal prosecution of Plaintiff was resolved favorably when he was acquitted on all counts by jury trial on November 16, 2016.

53. As a direct and proximate result of Defendant Dugal's conduct, Plaintiff suffered damages as described above.

### Count IV: Claim under Massachusetts Law for False Imprisonment
### (Defendant Dugal)

54. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

55. Defendant Dugal committed the common law tort of false imprisonment by physically arresting Plaintiff without probable cause.

56. As a direct and proximate result of Defendant Dugal's conduct, Plaintiff suffered damages as described above.

### Count V: Violation of Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I
### (Defendant Dugal)

57. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

58. Defendant Dugal violated Plaintiff's civil rights by threats, intimidation, and coercion when he violently arrested him and prosecuted him for charges unsupported by probable cause.

59. As a direct and proximate result of Defendant Dugal's conduct, Plaintiff suffered damages as described above.

### Count VI: 42 U.S.C. §1983 *Monell* Claim
### (Defendant City of Boston)

60. Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

61. Before the incident between Plaintiff and Defendant Dugal, Defendant City of Boston had a custom or practice of its police officers targeting black individuals for police encounters at a rate disproportionate to their proportion of the population.

62. The City of Boston was aware of this custom or practice at least as early as June of 2012.

63. This custom or practice was the moving force behind Defendant Dugal's unlawful acts towards Plaintiff.

64. As a direct and proximate result of the Defendant City of Boston's conduct, Plaintiff suffered damages as described above.

**WHEREFORE**, Plaintiff requests that this Court:

(a) Grant Plaintiff judgment on all claims;

(b) Award compensatory damages;

(c) Award punitive damages;

(d) Award the costs of this action, including reasonable attorney's fees, and;

(e) Award such other further relief as this Court deems appropriate and necessary.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
For Plaintiff George Savage,
By his counsel,

*/s/*

Justin Drechsler BBO #676968
Law Offices of Justin Drechsler, P.C.
485 Massachusetts Ave, Suite 300
Cambridge, MA 02139
(617) 210-7955
jdlawboston@gmail.com

Dated: 6/7/17