UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:17-cv-11263

GEORGE SAVAGE
          Plaintiff,

V.

CITY OF BOSTON and KARL DUGAL
          Defendants.

**DEFENDANT, CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNT VI**

The Defendant, City of Boston ("City"), hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the claim brought against it by Plaintiff, George Savage, ("Plaintiff"), on the grounds that the Plaintiff has failed to state a claim upon which relief can be granted. More specifically, the City seeks dismissal of Count VI (42 U.S.C. § 1983) of Plaintiff's Complaint. In support of this Motion, the City submits that Plaintiff's claim advanced pursuant to 42 U.S.C. § 1983 is insufficiently pled because there is no causal nexus between the constitutional violation alleged by Plaintiff and the data cited by the Plaintiff regarding City customs or practice.

### I.    PROCEDURAL AND FACTUAL[1] BACKGROUND

On June 16, 2014, at approximately 9:30 a.m. Plaintiff was approached by Boston Police Officer Karl Dugal on Boylston Street in downtown Boston. *Complaint* at ¶¶ 5, 7. Officer Dugal believed Plaintiff to be an individual known to him as Robert Green, who had several outstanding warrants. *Id*. at ¶7. Plaintiff told Officer Dugal that he was George Savage, not

---

[1] For the limited purpose of the instant motion, the following facts are taken as true.

Robert Green, and proceeded to walk away from Dugal. *Id.* at ¶11. Officer Dugal followed Plaintiff along Boylston Street, after which Plaintiff changed direction and walked back towards the area of the initial encounter. *Id.* at ¶12. Officer Dugal then arrested and handcuffed Plaintiff with the assistance of two other officers. *Id.* at ¶¶13-14. Plaintiff was charged with Disorderly Conduct, Assault and Battery on a Public Employee, Resisting Arrest, and Threats to Commit a Crime. *Id.* at ¶15. A jury trial was held on said charges on November 15th and 16th of 2016 at Boston Municipal Court, after which Plaintiff was acquitted. *Id.* at ¶¶17-18.

The Plaintiff originally commenced this action in Suffolk Superior Court on June 7, 2017. Plaintiff's Complaint alleges a constitutional claim against the City as well as various federal and state law claims against Officer Dugal stemming from his arrest on June 16, 2014. The Defendants were served on or about July 3, 2017. The Defendants properly removed the case to the United States District Court for the District of Massachusetts on July 11, 2017.

### III. ARGUMENT

#### A. Standard of Review

A complaint or count therein must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor. *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). However, this tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Mere recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545 (citations omitted).

"Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990). Section 1983 is not just "an instrument of justice in the hands of the weak against the mighty," but it also has the potential for misuse; therefore, a Section 1983 claimant must "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st. Cir.1982). Within this analytical framework, the Plaintiff has failed to plead facts that suggest any actionable claims against the City.

    **B.**    **Count VI Must Be Dismissed Because Plaintiff Has Failed To Properly Plead A 42 U.S.C. § 1983 Action Against The City.**

Count VI of Plaintiff's Complaint must be dismissed because the Plaintiff has failed to properly plead a 42 U.S.C. § 1983 action against the City. It is axiomatic that a municipality is not liable for the tortious actions of its employees simply by virtue of the employment relationship. *See Board of County Commissioners v. Brown,* 520 U.S. 397, 403 (1997) ("[w]e have consistently refused to hold municipalities liable under a theory of *respondeat superior*"); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978) (municipalities are "not responsible for the unauthorized and unlawful acts of its officers"); "[M]unicipal liability is not vicarious." *Estate of Bennett v. Wainwright,* 548 F.3d 155, 177 (1st Cir. 2008). Municipal liability is only established when "municipal employees *commit*

*unconstitutional acts* and those actions are shown to have been caused by a 'policy or custom' of the government." *Id*. (emphasis added).

### 1. The Statistical Data Cited By The Plaintiff Has No Causal Nexus To The Facts Of This Case.

Plaintiff has failed to allege a municipal claim because there is no causal nexus between the statistical data cited by the Plaintiff and the facts of this case.

To establish municipal liability, a plaintiff must show that "the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton*, 489 U.S. at 387; *see also Monell*, 436 U.S. at 694-95. Such a claim requires a plaintiff to demonstrate both the existence of a policy or custom and a "direct causal link" between that identified policy and the alleged constitutional deprivation. *City of Canton*, 489 U.S. at 385; *see also Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"). The affirmative linkage must be strong to establish municipal liability, as a "municipality's failure to train or supervise its police officers only becomes a basis for liability when 'action pursuant to official municipal policy of some nature *caused a constitutional tort*." *Kennedy v. Town of Billerica*, 617 F.3d 520, 531-32 (1st. Cir. 2010); *see also Young*, 404 F.3d at 26-27 (dealing with a failure to train claim and concluding that "the identified deficiency [in the training program must be] closely related to the ultimate injury"). As to what constitutes policy or practice, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1359 (2011) (citations omitted). Lastly, municipal failure must reveal "deliberate indifference to the rights of persons with whom [the employees] come into contact[,]" because "[o]nly then 'can such a shortcoming be properly thought of as a city 'policy

or custom' that is actionable under § 1983." *Id.*, 1359-60 (citations omitted). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 389 (1997). In sum, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged[,]" meeting "rigorous standards of culpability and causation[.]" *Id.*, 404-405.

Plaintiff bases his municipal liability claim on two alleged underlying constitutional violations: an unlawful stop and discrimination. *Complaint*, ¶ 27. As an initial matter, to the extent Plaintiff's municipal claim is premised on excessive force it is without merit because Plaintiff does not identify a single instance, other than the instant case, in which excessive force was used and does not allege any facts to suggest that City had a policy and/or custom of condoning excessive force. *See Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 769 (1st. Cir. 2010) (holding that liability may not be imposed for one instance of alleged misconduct).

To support his municipal claim based on the alleged unconstitutional stop, Plaintiff cites a singular study which allegedly found that the Boston Police Department's Field Interrogation, Observation, Frisk, and/or Search ("FIOFS") reports "reflected black individuals being stopped by police at rates wildly disproportionate to their share of the population." *Complaint*, ¶¶ 26-27. In short, Plaintiff bases his municipal liability claim on alleged literature and data regarding racial profiling in FIOFS reports, which is irrelevant to Plaintiff's municipal claim because there are no allegations in Plaintiff's Complaint that George Savage was stopped on account of his race or for purposes of conducting an FIOFS. Instead, Plaintiff's Complaint makes clear that George Savage was stopped because Officer Dugal believed he was Robert Green, who had multiple an outstanding warrants.

To prove his municipal liability claim based on the unlawful stop of George Savage, Plaintiff would have to allege that Boston police officers stopped African-Americans with outstanding warrants more frequently than they stopped other populations of people with outstanding warrants.  *See Santiago v. Fenton,* 891 F.2d 373, 381 (1st Cir. 1989) (plaintiff must show that municipal policy/custom led to alleged constitutional deprivation).  Plaintiff has failed to point to any statistical data suggesting that Boston police officers stopped African-Americans with outstanding warrants more than they stopped other populations of people with outstanding warrants.  Since there is no causal nexus between the data and literature cited by the Plaintiff and the facts alleged in his Complaint, Plaintiff has failed to state a municipal liability claim against the City.

      **2.**      **Plaintiff's Only Evidence of a City Custom or Practice is Patently Insufficient to Ground a Monel Claim.**

Plaintiff's sole evidence of an existing unconstitutional custom or practice by the City is a single ACLU report ("Report") regarding FIOFS statistical data. This court has already ruled a similar report, published by the ACLU a year later was insufficient for purposes of a *Monel* claim. See Judge Kelley's "Report and Recommendation on Defendant City of Boston's Motion to Dismiss" C.A. no. 15-14174-NGM, Docket No. 62. Plaintiff here sets out several findings of the Report, including that: FIOFS reports reflected black individuals being stopped by police at rates disproportionate to their share of the population, targeting of black individuals was occurring, 75% of the FIOFS reports cited the reason for the stop was to "investigate a person," and that over a four year period, over one hundred thousand black Bostonians had encounters with police that did not result in arrest of seizure of contraband. *Complaint*, at ¶¶27-31. What the Complaint fails to state however, is that the Report offers zero data on instances in which

individuals with outstanding warrants are stopped. As the Complaint makes clear, Officer Dugal stopped Plaintiff because he believed him to be an individual with outstanding warrants. While Officer Dugal was ultimately incorrect in that belief, nothing in the Report suggests mistaken identity of FIOFS targets were due to racial bias. Further, the simple fact that Plaintiff was approached by Officer Dugal for the specific reason of believing he was Robert Green, negates the relevancy of FIOFS data, because at that point, it was not a general stop and investigation of an unknown black male, it was the attempted stop of a specific individual known to the officer. The Report's findings in no way support Plaintiff's claim that when he was mistakenly identified as an individual with outstanding warrants and approached by an officer, that he was being treated differently than any similarly situated individual because of his race. As Judge Kelly stated in her previously referenced order, the ACLU report "is simply not specific enough for the court to draw the conclusions from it the plaintiff urges."

### 3. Plaintiff has failed to allege a viable theory of a failure to train because no similar instances are cited.

Plaintiff's Complaint sparsely contends that Officer Dugal was not trained to police in a racially neutral manner, but fails to offer any further detailed allegations on the issue of training. *Complaint,* ¶¶35-36. First, "[t]he liability criteria for 'failure to train' claims are exceptionally stringent." *Hayden v. Grayson,* 134 F.3d 449, 456 (1st Cir. 1998) (*citing City of Canton*, 489 U.S. 388-89).  Moreover, a failure to train claim is actionable only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where "the identified deficiency in a city's training program [is] closely related to the ultimate injury." *Young v. City of Providence,* 404 F.3d 4, 26 (1st Cir. 2005) (*citing City of Canton*, 489 U.S. 378).  A finding of deliberate indifference requires also that the City

disregarded a known or obvious risk of serious harm from its failure to develop a training program. *Young,* 404 F.3d at 28; *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir. 1989).

Deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Id*. *See also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). "[T]he fact that the training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Young*, 404 F.3d at 27 (*citing Canton*, 489 U.S. at 391); *see also Burns v. Loranger*, 907 F.2d 233, 239 (1st Cir. 1990). "Where * * * a claim of municipal liability is predicated upon a failure to [train], the requisite degree of fault must be shown by proof of background events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 394-95 (O'Connor, J., concurring in part and dissenting in part).

Here, Plaintiff's Complaint is completely devoid of a single factual allegation as to what training by the City of its officers was "deliberately indifferent" to Plaintiff's or any other citizen's constitutional rights. Plaintiff's allegations that the City failed to properly train its officers on policing in a "racially-neutral manner" and "the rules of criminal law" is nothing more than a conclusory allegation without even a scintilla of factual support. Plaintiff points to no specific policy or action by the City concerning the failure to train. Without more, the single incident in this case in an insufficient basis on which to establish municipal liability under §1983. See *Canton*, 489 U.S. at 390-391 ("That a particular officer may be unsatisfactorily trained will not be alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors others than a faulty training program.") Plaintiff here has not alleged a

pattern of similar violations that would establish a policy of inaction equivalent to a decision by the City to violate the Constitution. *Connick,* 563 U.S. at 72.

## IV. CONCLUSION

For the reasons set forth above, the City respectfully requests that Count VI of Plaintiff's Complaint against the City be dismissed with prejudice.

| **CERTIFICATE OF SERVICE** | Respectfully submitted, |
|---|---|
| I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants. | DEFENDANT, CITY OF BOSTON<br><br>Eugene O'Flaherty,<br>Corporation Counsel<br><br>By its attorney, |
| 7/24/17   /s/ Katherine N. Galle<br>Date         Katherine N. Galle | /s/ Katherine N. Galle<br>Katherine N. Galle (BBO#691660)<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>City Hall, Room 615<br>Boston, MA 02201<br>(617) 635-4091<br>Katherine.Galle@boston.gov |

## 7.1 Certification

Undersigned counsel certifies that on July 24, 2017 pursuant to LR, D. Mass. 7.1(a)(2), undersigned counsel conferred with counsel for the Plaintiff in an effort to resolve the underlying issues raised herein but was unable to do so.

Date:   July 24, 2017                                             /s/ Katherine N. Galle
                                                                                Katherine N. Galle